UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY R.,

              Plaintiff,

      v.                                  **DECISION AND ORDER**
                                                     19-CV-6220S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____


      1.      Plaintiff Tammy R.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed her application with the Social Security Administration on July 29, 2014. (R.[2] at 78.) Plaintiff alleged disability beginning on June 14, 2014, due to back, neck and knee injuries, fibromyalgia, high blood pressure, right wrist injury, depressive disorder, severe anxiety, varicose veins, and head injury. (R. at 79-80.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On August 23, 2016, ALJ Julia Gibbs held a hearing, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 41-77.) At the hearing, the ALJ permitted Plaintiff to amend her alleged onset date to November 28,

_____

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

2012. (R. at 49.) Vocational Expert Cindy Burnette also appeared and testified by telephone. At the time of the hearing, Plaintiff was 46 years old, with a twelfth-grade education and prior work experience as a bus monitor and cafeteria monitor. (R. at 44-45, 51.)

3.      The ALJ considered the case *de novo* and, on May 5, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 10-29.) On February 1, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on March 25, 2019, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 18, 21.) Plaintiff did not file a reply and this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where

---

[3] The ALJ's May 5, 2017, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not,

3

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between her alleged onset date of November 28, 2012, and her date last insured

4

of December 31, 2016. (R. at 12.)  At step two, the ALJ found that Plaintiff has the severe impairments of moderate depression, anxiety, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, degenerative joint disease of the knees, right trigger thumb, carpal tunnel syndrome, and radial styloid tenosynovitis (deQuervain's). (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 13.)

11.    Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, except that

> [s]uch work is unskilled work with an SVP of 1 or 2. Such work does not require rapid rotation of the neck. Such work does not require more than frequent use of the hands for fingering and grasping. Such work does not require interaction with the general public.

(R. at 15.)

12.    At step four, the ALJ found that Plaintiff was unable to perform any past relevant work during the relevant period. (R. at 27.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy during the relevant period that Plaintiff could have performed. (Id.) Accordingly, the ALJ found that Plaintiff was not disabled between her amended alleged onset date of November 28, 2012, through her date last insured of December 31, 2016. (R. at 28.)

13.    Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to apply the correct legal standards to the opinions of Plaintiff's treating physician, Dr. Michael Lax, and to other medical opinions in the record,

and because she improperly assessed Plaintiff's credibility. Defendant argues that the ALJ's decision is supported by substantial evidence.

14.     For claims filed before March 27, 2017, such as this one, the Commissioner evaluates medical opinion evidence under the framework set forth in 20 C.F.R. § 404.1527.[4] Under that framework, the Commissioner is required to evaluate and consider every medical opinion submitted, together with the rest of the relevant evidence.  See 20 C.F.R. § 404.1527 (b) and (c).  The opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c). If a treating physician's opinion is not given controlling weight, the Commissioner considers the following factors in determining what weigh to give it: whether the medical source has examined the claimant (with more weight afforded to the opinion of a source who has); whether the medical source has a treatment relationship with the claimant (with more, if not controlling, weight afforded to the opinion of a treating source); whether the medical source's opinion is supported (with more weight afforded to well-explained opinions supported by diagnostic findings and other relevant evidence); whether the medical source's opinion is consistent with the record as a whole (with more weight afforded to opinions that are); whether the medical source is a specialist (with more weight afforded to the opinion of a specialist in the relevant field than to the opinion of a non-specialist); and whether there are other relevant factors informing the medical source's opinion (with more weight afforded to medical sources who understand the social

---

[4] For claims filed on or after March 27, 2017, the Commissioner evaluates medical evidence under 20 C.F.R. § 404.1520c.

security disability process and its evidentiary requirements or who are familiar with the other information in the claimant's case record). <u>See</u> 20 C.F.R. §§ 404.1527 (c)(1)-(6), 416.927 (c)(1)-(6); <u>Smith v. Comm'r of Soc. Sec.</u>, 351 F. Supp. 3d 270, 279 (W.D.N.Y. 2018).

15.    After considering these factors, the Commissioner must adequately explain the weight afforded to the medical opinions, including those that do not receive controlling weight. <u>See</u> <u>Falbru v. Berryhill</u>, No. 6:17-CV-6314 (MAT), 2018 WL 1553965, at *2 (W.D.N.Y. Mar. 30, 2018) ("Remand is appropriate where an ALJ fails to consider these factors and to adequately explain the weight given to the consultative examiner's opinion."); <u>Hatcher v. Astrue</u>, 802 F. Supp. 2d 472, 476 (W.D.N.Y. 2011) ("The ALJ must then articulate his reasons for assigning the weight that he does to both treating and nontreating physicians' opinions."). Failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." <u>Burgess v. Astrue</u>, 537 F.3d 117, 129–30 (2d Cir. 2008) (quoting <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir.1999)). However, an ALJ's failure to consider the above factors can be harmless error, if "a searching review of the record" assures a court that "the substance of the treating physician rule was not traversed." <u>Estrella v. Berryhill</u>, 925 F.3d 90, 93 (2d Cir. 2019).

16.    Plaintiff was seen by Dr. Michael Lax and his nurse practitioner, Jacque Miller, throughout the relevant period between 2012 and 2016. There are multiple records of examinations that Dr. Lax indicated he had participated in or agreed with. Therefore this Court finds, and Defendant does not dispute, that Dr. Lax was Plaintiff's treating physician. Medical examinations performed by NP Miller and signed off on by Dr. Lax reveal that Plaintiff was seen numerous times for neck pain, headaches, right hand pain,

and lower back pain. On June 19, 2014, a medical examination found an abnormal gait and decreased strength in her lower extremities, and that she was unable to perform either heel or toe walking. (R. at 395.) On July 2, 2014, Plaintiff was seen for wrist pain. An exam found tenderness and some decreased strength. (R. at 397.) On December 9, 2015, a physical exam found an abnormal gait and positive straight leg raise. (R. at 1241-42.) Plaintiff's right and left knee and ankle extension and flexion were all 2/5, and she was unable to perform toe or heel walking. (Id.) Dr. Lax and NP Millar both signed off on the note, as they regularly did. (Id.) On February 23, 2016, a neurological exam revealed decreased sensation in Plaintiff's right upper extremity. (R. at 1245.) She had 2/5 strength in her elbow and wrist flexion and extension, and 1/5 strength in her finger abduction. NP Millar stated that Plaintiff had an abnormal gait and required a cane or rolling walker to ambulate. (Id.) NP Miller noted that Plaintiff had both headaches and pain in the back of her head where she was hit with a basketball (Id.).

17.     On August 15, 2016, Dr. Lax completed two medical opinion forms regarding Plaintiff's functioning: an "Evaluation of Physical Work Limitations" (R. at 1226-27) and a "Doctor's Report of MMI/ Permanence," apparently generated for the New York Workers' Compensation system. (R at 1258-60.)  In the first evaluation, Dr. Lax noted that he had treated Plaintiff since 2011, and stated that Plaintiff's diagnoses were intractable chronic headaches, low back pain with sciatica, neck pain, wrist pain, and leg pain. (R. at 1226.)  He opined that she would be absent more than four times per month because of her impairments or treatment and assessed her with limitations in standing, reaching, lifting, and other functions. (Id.)

18.     The ALJ disagreed with Dr. Lax's opinion. She found that Plaintiff's headaches were not likely to persist at a severe level for a continuous 12-month period. The ALJ gave Dr. Lax's prognosis of "fair" significant weight, but did not give great weight to Dr. Lax's functional assessment because it was "not accompanied by the results of a functional capacity examination," because Dr. Lax appeared to base his opinions on Plaintiff's subjective complaints, and because determinations of disability are reserved to the Commissioner. (R. at 26.)

19.     Although the ALJ was correct that a medical provider's determination of disability is not entitled to any weight, the rest of her analysis does not conform to the treating physician rule. The Burgess factors include the length of treatment and the relationship between the provider and the claimant, both of which the ALJ should have addressed in her consideration. The presence or absence of a "functional capacity evaluation" is not a Burgess factor.

20.     Additionally, the fact that a provider based his or her opinion to some extent on a plaintiff's subjective complaints is not, by itself, grounds for rejecting that opinion. It is not improper for a treating source to take into account the patient's subjective complaints. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) ("Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool."). On the other hand, "a treating source's opinion is not considered well-supported if it is based _entirely_ on the claimant's own subjective reports." Feringa v. Comm'r of Soc. Sec., No. 515CV785LEKCFH, 2016 WL 5417403, at *8 (N.D.N.Y. Sept. 9, 2016), report and recommendation adopted, No. 515CV785LEKCFH, 2016 WL 5415780 (N.D.N.Y. Sept. 28, 2016) (emphasis added)

(quoting <u>Capron v. Colvin</u>, 14-CV-6080 (JCS), 2015 W L 3906723, *9 n.10 (W.D.N.Y. June 25, 2015) (citing <u>Baladi v. Barnhart</u>, 33 F. App'x. 562, 563 (2d Cir. 2002) and <u>Polynice v. Colvin</u>, 576 F. App'x. 28, 31 (2d Cir. 2014)). Here, Dr. Lax clearly had a long-term relationship with Plaintiff. He had either examined Plaintiff or approved NP Miller's exam notes since 2014. This familiarity with Plaintiff supports an inference that the form was not competed *entirely* based on Plaintiff's subjective complaints and makes this a weak reason for rejecting Dr. Lax's opinion.

21.     As for the second opinion, which addressed factors relevant to the Workers' Compensation system, this Court agrees that any opinions of Dr Lax as to Plaintiff's percentage impairment or as to whether or not Plaintiff was "disabled" merit no weight, because these are matters reserved to the Commissioner in Social Security cases. <u>See</u> 20 C.F.R. § 404.1527 (d)(1); § 416.927 (d)(1). Thus, the ALJ was under no obligation simply to adopt Dr. Lax's opinion that Plaintiff was "markedly disabled."

22.     However, as with the first opinion, the reasons the ALJ gave for rejecting Dr. Lax's second opinion do not constitute the "good reasons" required by the regulations. The ALJ gave Dr. Lax's opinion "limited weight" because it was not accompanied by the results of a functional capacity assessment. As discussed above, this is not a "good reason" for rejecting the opinion of a treating physician, particularly without any discussion of the statutory factors weighing in favor of Dr. Lax's opinion.

23.     For all these reasons, this Court finds that the ALJ's RFC is not based on substantial evidence.

24.     Plaintiff also argues that the ALJ's did not properly assess the opinions of other medical sources and improperly assessed Plaintiff's credibility. This Court offers no

opinion on these arguments at this time since the case is being remanded on other grounds. On remand, the ALJ is free to address these arguments to the extent she deems necessary.

25.     After carefully examining the administrative record, this Court finds cause to remand this case to the Commissioner for further administrative proceedings consistent with this decision.  Plaintiff's motion for judgment on the pleadings is therefore granted. Defendant's motion seeking the same relief is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 21) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:          September 21, 2021
                Buffalo, New York


                                             s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge